STATE of North Dakota, Plaintiff and Appellee,

v.

Linda DAHL, Defendant and Appellant.

Cr. No. 880315.

Supreme Court of North Dakota.

May 17, 1989.

Brian W. Nelson (argued), Fargo, for defendant and appellant.

Lyle R. Bopp, State's Atty. (argued), Forman, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Linda Dahl brings this appeal from a jury verdict finding her guilty of possession of a controlled substance with intent to manufacture or deliver. Prior to trial, Dahl had moved the court for an order suppressing evidence obtained as the result of a search warrant. The motion was denied. On appeal, Dahl asserts that the information provided to the magistrate, based upon the statement of an informant, was insufficient to establish probable cause for the issuance of a search warrant, and argues that the evidence obtained as a result of the search should be suppressed. We affirm.

In April of 1987, the sheriff of Sargent County, Arden Barglof, received a report that a farmstead used as a hunting lodge had been broken into and numerous articles, including a custom made burgundy couch, matching chair and footstool, had been taken from the residence. On July 22, 1987, Sheriff Barglof and Officer Dick Rolle of the North Dakota Bureau of Criminal Investigation interviewed the informant regarding the burglary. At the time, the informant was incarcerated at a federal prison in Minnesota. During the course of the interview, Sheriff Barglof and Officer Rolle represented to the informant that he would not be prosecuted for the information he was about to give concerning the hunting lodge burglary and another related burglary.

After obtaining a written statement from the informant, indicating among other things that the stolen property was currently located at the Dahl residence, Sheriff Barglof submitted an affidavit to Judge Tjon of Sargent County in order to procure the issuance of a search warrant. Judge Tjon decided that it would be appropriate to obtain additional recorded oral testimony to determine whether or not there was probable cause for the issuance of the warrant and a hearing was held. The informant's written statement was not submitted at that hearing. Further, Judge Tjon was not advised that the informant was currently incarcerated, nor was he informed that Sheriff Barglof and Officer Rolle had told the informant that he would not be prosecuted with regards to the information he had given them. However, Sheriff Barglof testified as to the informant's reliability, both on direct examination and in response to questions from the court. Judge Tjon determined that probable cause existed and issued a warrant to search the Dahl residence.

On July 27, 1989, Sheriff Barglof and several other law enforcement officers searched the residence where Linda Dahl lived with her husband. Although no one was home at the time of the search, the officers found mail addressed to Linda Dahl laying on the table in the dining room area and women's clothing hanging in the closet. During the course of the search, the officers found the custom made burgundy couch, matching chair and footstool. The officers also discovered several large potted marijuana plants in a basement room, growing under a system of lights. The furniture, the marijuana plants, and the growing equipment were seized as evidence. Dahl was subsequently charged with the offense of possession of a controlled substance with the intent to manufacture or deliver.

Prior to trial, Dahl moved the court for an order suppressing all evidence obtained by reason of the search on the grounds that the warrant was issued without probable cause. The motion was denied and Dahl was subsequently convicted.

Dahl appeals from the jury verdict finding her guilty, asserting that the court erred in denying her motion to suppress. Dahl argues that, as the informant was a member of the criminal milieu, the veracity

requirements of *Aguilar–Spinelli*[1] should have been strictly applied. She further contends that Sheriff Barglof's failure to advise the magistrate that the informant was currently an inmate and that the informant had been promised immunity constitutes an intentional omission equivalent to a false statement and the exclusionary rule should be applied to all evidence obtained as a result of the search warrant.

In determining whether or not sufficient evidence was presented to the county court to establish probable cause, we are guided by the following standard:

> "Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place."

*State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988); *see also State v. Handtmann and Fuhrman*, 437 N.W.2d 830, 834 (N.D. 1989).

In *State v. Ringquist*, we adopted the totality-of-the-circumstances test for reviewing probable cause under Article 1, § 8, of the North Dakota Constitution. *See State v. Ringquist, supra*, 433 N.W.2d at 211. Our standard is now the same as that required under the Fourth Amendment of the United States Constitution as set forth in *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983):

> "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'sub-

stantial basis for ... conclud[ing]' that probable cause existed."

We recognize that "the guidelines provided by *Aguilar–Spinelli* have been, and still will be, helpful for an informed decision by a magistrate; ...." *State v. Ringquist, supra*, 433 N.W.2d at 213. However, because we have adopted the totality-of-the-circumstances test, we are no longer governed by the veracity requirements of *Aguilar–Spinelli, supra.*

The reliability of an informant remains pertinent to a determination of whether or not probable cause exists for the issuance of a warrant based upon that informant's statement, particularly when that informant is a member of the "criminal milieu." In order to be privy to information regarding criminal activity, the informant himself "is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals." W. LaFave, *Search and Seizure*, § 3.3, p. 611 (2d ed. 1987); *see also United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). "Frequently, informants are themselves criminals, drug addicts, or even pathological liars.... Obviously, such people give information for reasons other than the call of civic duty." Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards*, 81 Yale L.J. 703, 712–713 (1972). There is no presumption of reliability for such an informant as compared to information given by an upstanding citizen of the community. That reliability must be established.

In *State v. Ringquist*, we cautioned that "[s]ufficient information, rather than a 'bare bones' affidavit, must still be presented to the magistrate to allow that official to determine probable cause. That determination cannot be a mere ratification of the bare conclusions of others." *State v. Ringquist, supra*, 433 N.W.2d at 213; *see also State v. Handtmann and Fuhrman, supra*, 437 N.W.2d at 834.

1. *Aguilar v. State of Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Although the information Sheriff Barglof neglected to provide to Judge Tjon is of the type generally pertinent to a determination of whether or not probable cause exists to issue a search warrant, under the totality-of-the-circumstances test, that information is not necessary in this case to establish probable cause. At the hearing prior to issuance of the warrant, Sheriff Barglof explained through the following testimony why he thought the informant was reliable:

"A. During the questioning of the informant, I asked him various questions already knowing the answers, that only someone who was present at the time of the burglary could determine. Some of these—those facts are for instance, how they gained access to the farmstead, or the farm home. This particular farm home is secured by a gate across the—the access road to the farm, and that gate remains locked year round. This particular farm home is used as a hunting lodge and is only used during the fall during hunting season or when the owner visits, and the way into the farm other than through the gate is driving across the field from the north side of the farm property. The informant described that drive across the property and also driving across the—or beside the grove of trees running behind the property, so if he hadn't have been there, he wouldn't have known about this particular grove of trees. There are also three doors on the house. When I asked him which door they gained access to the house from, he stated that they kicked in the door on the west side of the house. I did not mention which side of the house the doors were on or how entry was gained. That also tended to make me believe that he had been there. Once inside the house there was also mention made of a shot from a .22 caliber pistol being fired into the floor and striking a picture. When I made my initial investigation back in April of '87, I found a picture laying on the floor along with several other pictures, but it was broken in such a way that makes—made me believe that it was broken by being strucken—struck by a shell or a projectile from a pistol or a gun. So these things are some of the things that lead me to believe that he was telling the truth, and that the only way that he would have known that, is if he would have actually been present during the burglary.

"Q. Okay. The affidavit itself alleges that certain property is believed to be at the Linda and Randy Dahl residence, namely a custom made burgundy couch, a large matching chair and footstool, two brass-based table lamps with woven shades, a glass-topped coffee table and two glass-topped end tables. Did you provide the informant with this information or did he provide you with these items?

"A. Well, the informant in particular mentioned the custom made couch, chair and footstool. And he also mentioned the end tables and lamps. Before he mentioned those particular items, before he was provided with the list of the stolen items, and asked to go down through the list of stolen items and identify the things that first of that he took, and were at the Dahl residence. He in particular named those items. The couch and the chair and the footstool are a custom made matching set of furniture, and they're very distinct. And he specifically mentioned those three items along with the end tables and the lamps. Before he was provided with any list, or had any knowledge of actually what we were looking for.

"Q. The informant had indicated that he had seen these certain items in the Douglas house?

"A. Yes, he saw them at the Douglas house and then—

"Q. And then later seen them in the Linda and Randy Dahl house?

"A. Yes, on several different occasions."

Sheriff Barglof was further questioned by the court concerning the reliability of the informant.

"THE COURT: What is your opinion as to his basic reliability. Are you relying mainly on the fact that he—and questioned him, or talking to him, that he—what he told you appeared to be accurate from what you already knew. Is that why you believe that his information that this is at the Dahl residence, is reliable?

"MR. BARGLOFF: That's correct, Your Honor, and also when I was Chief of Police, I had the dubious duty of collecting water bills, and when (deleted)—er, excuse me, the informant lived in Forman here, I collected some water bills from him, and when he told me he was going to pay it, he always did at the time that he told me."

We find that, based upon these facts, the magistrate could have concluded that the informant was reliable with regards to information concerning the stolen property. As we noted in *State v. Ringquist*, "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... [which is not weighed in] individual layers but [in] the 'laminated' total." [Cite omitted.] *State v. Ringquist, supra*, 433 N.W. 2d at 215. Viewing the evidence in this case in that manner and under the totality of circumstances, we conclude that the magistrate had a substantial basis for concluding that probable cause existed for the issuance of a search warrant pursuant to the State and Federal Constitutions. We would have preferred that the sheriff had informed the magistrate that the informant was, at the time of the interview, an inmate of the federal prison in Minnesota and that he had been assured of immunity from prosecution by the sheriff for information he divulged, but in light of the description of the scene of the crime, and items stolen and their accuracy in detail, it seems reasonable that the magistrate could assume the truth of the assertion that the informant had seen the stolen items at the defendant's home. This is especially so in light of the fact that there would probably be few search warrants issued if the information had to come only from saints. We therefore affirm.

VANDE WALLE, MESCHKE and GIERKE, JJ., concur.

LEVINE, J., concurs in the result.