**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Brian MISCHE, Defendant and Appellee.**

**Cr. No. 890038.**

Supreme Court of North Dakota.

Nov. 20, 1989.

Patricia L. Burke, State's Atty., Bismarck, for plaintiff and appellant.

Michael Ray Hoffman, Bismarck, for defendant and appellee.

VANDE WALLE, Justice.

The State appealed from an order suppressing drugs and related evidence seized in a warrant search of Brian Mische's trailer home. The basic issues in this case are whether substantial evidence of criminal activity by a defendant at a place other than his home is sufficient probable cause to issue a warrant to search the home of the defendant and, if not, whether an affidavit of a police officer stating that in his experience and training "individuals who routinely deal or sell controlled substances normally keep a supply on hand for sale

and do maintain records or other documentation of their controlled substances" is sufficient, when considered with the evidence of criminal activity of the owner unrelated to his home, to issue a warrant to search that home. Because we believe that evidence of criminal activity unrelated to a defendant's home is not alone sufficient probable cause to search that home, and because we do not believe the affidavit provides sufficient evidence of criminal activity at the defendant's home to constitute probable cause to search that home, we affirm.

Law enforcement officials, conducting undercover investigations, arranged a drug "buy" from Dion Wolbaum. Wolbaum agreed to pick up marijuana and deliver it to the buyer, an undercover agent. Wolbaum took the agent's money and drove to a Bismarck home where he met Mische. Officer Cleveland followed Wolbaum and verified that he met no one else and made no other stops. When he delivered the marijuana, Wolbaum was arrested. Wolbaum told Officer Cleveland that he had purchased the marijuana from Mische and that, about a week earlier, he had also purchased marijuana from Mische at the same place.

Because Mische had sold drugs to Wolbaum at the Bismarck home and because Mische's parents lived there, the officers believed Mische lived there, too. Using Officer Cleveland's affidavit about these criminal activities at the Bismarck home as grounds, the officers obtained a warrant to search it. During the search, the officers discovered only Inositol, a cutting agent for controlled substances, which did not belong to Mische's parents. Another container of Inositol was found in Mische's car during a search of it after he was arrested and with his consent. The officers also learned that Mische lived in a trailer in Lincoln, a town near Bismarck.

The same day, April 10, 1988, another warrant was obtained to search the trailer in Lincoln. This time the officers relied primarily on an affidavit by Officer Becker. This affidavit incorporated Officer Cleveland's affidavit, described the results of the searches of the Bismarck home and Mische's car, and added two paragraphs about Mische's trailer home in Lincoln:

"5) That your affiant believes, based on his training and experience that individuals who regularly deal in controlled substances keep controlled substances, paraphernalia and documentation (which are readily disposable) at their residence.

"6) That your affiant rec[ei]ved information from an informant that Brian Mische sells controlled substance in Lincoln, North Dakota. Other information given by that informant has been verified. This information was received April 10, 1988. In February, 1988 another confidential informant gave information that Brian Mische was selling controlled substances from his home in Lincoln, North Dakota. This informant has also supplied other information which has been verified."

This warrant sanctioned search of the trailer for "controlled substances, drug paraphernalia, [and] records, books, and other documentation of drug transactions." In the search, the officers seized drug paraphernalia, drug trafficking papers, marijuana seeds, and methamphetamine hydrochloride.

Mische was criminally charged with delivery of marijuana and with possession of methamphetamine. Mische pled not guilty and moved to suppress the evidence seized in his trailer at Lincoln. The trial court suppressed that evidence for lack of probable cause to issue the warrant, reasoning:

"The affidavit ... fails to provide any information other than suspicion and speculation that any drugs are located at [Lincoln]. Paragraphs 1 through 5 concern the affiant's background and a search conducted at another residence where Mr. Mische sometimes stayed which revealed nothing.

"The last paragraph is nothing more than conclusionary information provided by unidentified people. No knowledge of any drugs appears in the affidavit, and,

in addition, there would be no way to gauge their credibility.

"Under either *A[g]uilar* or *State v. Ringquist,* no threshhold [sic] is met and the warrant issued is nothing more than a general search warrant prohibited by the Fourth Amendment."

Believing that the trial court had overlooked Officer Cleveland's affidavit because Mische's criminal activities were not mentioned in the trial court's brief memorandum, the State moved for reconsideration. Without comment, the trial court denied reconsideration. The State appealed.

On appeal, the State argued that probable cause had been shown in the combined affidavits of Officer Cleveland and Officer Becker and that, if not, the "good-faith" exception to the exclusionary rule should permit use of the evidence acquired in the search. Mische countered that probable cause was lacking and suppression was proper. Mische also opposed the adoption of the "good-faith" exception but, if adopted, he argued that it should not apply in this case because the police acted in bad faith and the search was unreasonable.

Emphasizing the "personal knowledge" and "veracity" of Officer Cleveland and of Officer Becker and stressing their training and experience in law enforcement, the State argued that these circumstances "provide[d] a more than sufficient basis for a finding of probable cause" to search Mische's trailer home. Recognizing that the trial court "appeared to focus in on the last paragraph of Officer Becker's affidavit," the State argued that this paragraph "only enhance[d] the information given previously."

Mische argued that "[t]here was no factual, credible link of contraband to [Mische's] residence," that the officers' conclusions that suspected items were located at the Lincoln trailer "did not rise to the level of probability," and that the "warrant, therefore, was a general warrant which should not be upheld...."

Our constitutions command that "no warrant[s] shall issue but upon probable cause, ..." Fourth Amendment, United States Constitution; Article I, Section 8, North Dakota Constitution. Probable cause is a question of law. *State v. Metzner,* 338 N.W.2d 799 (N.D.1983). We recently adopted the "totality-of-the-circumstances" standard for reviewing probable cause. *State v. Ringquist,* 433 N.W.2d 207 (N.D. 1988). Under the totality-of-the-circumstances test, hearsay can be considered. The basis of knowledge of an informant and the veracity of an informant are still relevant, but are more flexibly evaluated so that strength in one aspect can balance deficiencies in the other. *Ringquist, supra,* at 211–12. When we adopted this more flexible standard of review, we again warned that information, not conclusions, must be submitted to the issuing magistrate:

"In *State v. Ringquist,* we cautioned that '[s]ufficient information, rather than a "bare bones" affidavit, must still be presented to the magistrate to allow that official to determine probable cause. That determination cannot be a mere ratification of the bare conclusions of others.' *State v. Ringquist, supra,* 433 N.W.2d at 213; *see also State v. Handtmann and Fuhrman, supra,* 437 N.W.2d at 834." *State v. Dahl,* 440 N.W.2d 716, 718 (N.D.1989).

Conclusions alone are insufficient for probable cause.

We recently summarized the essential inquiry for probable cause to search:

"[P]robable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Ringquist,* 433 N.W.2d, at 212.

The magistrate's duty was to determine whether the affidavits established that evidence of criminal activity would probably be found at Mische's trailer home in Lincoln.

■ We agree with the trial court that Officer Becker's affidavit gave no information as to the basis of knowledge of either of his unidentified informants and vouched for their veracity only in a most conclusional way. We have often emphasized that an

affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause. *State v. Schmeets,* 278 N.W.2d 401, 407 (N.D.1979); *State v. Thompson,* 369 N.W.2d 363 (N.D. 1985); *State v. Ringquist, supra; State v. Handtmann,* 437 N.W.2d 830, 834 (N.D. 1989); and *State v. Dahl, supra.* Officer Becker's affidavit furnished no details to the magistrate to show how his informants knew about criminal transactions at Mische's place in Lincoln. No details reinforced Becker's claim that other information from the informants had been verified. At best, as the State recognized, the paragraph about informants' descriptions of Mische's activities at his Lincoln trailer home, "only enhances the information" in Officer Becker's affidavit. Clearly, standing alone, Becker's paragraph 6 is not sufficient for probable cause. Nevertheless, we may consider it in the "laminated total" of the layers of information employed by the issuing magistrate. All information for probable cause should be taken together, not analyzed piecemeal.

In doing so, we are not confined to Officer Becker's affidavit alone. Though somewhat indirectly, Officer Becker incorporated Officer Cleveland's affidavit in his own. In his paragraph 4, Becker declared that he "was present during all the events listed in the affidavit" of Officer Cleveland and swore that the "facts as listed in that search warrant [affidavit] are true to your affiant's knowledge and belief as he has also reviewed that affidavit." NDRCrimP 41(c)(1) clearly directs that a warrant can be based on the sworn evidence of more than one witness ("on an affidavit or affidavits"). In *State v. Mondo,* 325 N.W.2d 201 (N.D.1982), this court reversed a trial court's ruling that an affidavit for a search warrant was insufficient when it was accompanied by another affidavit for an arrest warrant which supplied the missing information. Officer Cleveland's affidavit was not only incorporated in Officer Becker's, but it had been filed on the same day with the same magistrate. The two affidavits were considered together for probable cause to search Mische's trailer home in Lincoln.

There was substantial evidence of criminal activity by Mische. His sale of a controlled substance that same day from the Bismarck home of his parents was well developed in Officer Cleveland's affidavit. The warrant to search for drugs, paraphernalia, and records at the Bismarck home was based upon probable cause. Whether those same things would probably be at Mische's trailer home in Lincoln was the necessary inquiry by the magistrate when Officer Becker sought the second search warrant.

Becker's affidavit extended relevant details through the search of the Bismarck home which turned up two key items of additional information. According to Becker, "[t]he search revealed a bottle of a substance known to be a cutting agent for controlled substances (Inositol)" and Mische did not live there but "was purchasing a trail[e]r" at Lincoln. A cutting agent is illegal drug paraphernalia. NDCC 12.1–31.1–01(6); *People v. Morrison,* 178 Ill. App.3d 76, 127 Ill.Dec. 248, at 254, 532 N.E.2d 1077, at 1083 (4 Dist.1988) ["Inositol is a vitamin supplement with the same physical characteristics as cocaine, and it is commonly used by drug dealers as an additive to the cocaine in order to increase profits."].

Although the State contends that the trial court ignored or was unaware of Officer Cleveland's affidavit incorporated by reference in Officer Becker's affidavit because the court made no reference to Officer Cleveland's affidavit, that contention is simplistic. We believe the two affidavits were considered together for probable cause to search Mische's trailer home in Lincoln and that the lack of any reference to the Cleveland affidavit is not a result of lack of knowledge or consideration of the affidavit by the court but rather that the Cleveland affidavit, while it contains sufficient information to establish probable cause to search the Bismarck home, simply does not add any additional probable cause to search the trailer in Lincoln.

The State, however, argues to the contrary. It points to Officer Cleveland's affidavit relating that the money given to

Mische in Wolbaum's drug-buy was identifiable by serial numbers and "would be in the possession of Brian Mische or in the residence at ... Bismarck, ..." The money was not found there, nor was it found on Mische when he was arrested, but another bottle of the cutting agent, Inositol, was found in a search of Mische's vehicle. Primarily, the State relies on Officer Cleveland's declaration:

"That in your affiant's training and experience individuals who routinely deal or sell controlled substances normally keep a supply on hand for sale and do maintain records or other documentation of their controlled substances transactions."

Officer Becker elaborated on this inference in his affidavit:

"That your affiant believes, based on his training and experience that individuals who regularly deal in controlled substances keep controlled substances, paraphernalia and documentation (which are readily disposable) at their residence."

We have often instructed that the courts must take into account inferences and deductions that a trained and experienced officer makes. For examples, *see State v. Geiger*, 430 N.W.2d 346 (N.D.1988) and *State v. Riedinger*, 374 N.W.2d 866, 875 (N.D.1985). We readily acknowledge that police officers may have expertise that exceeds that of laypersons. E.g., *State v. VandeHoven*, 388 N.W.2d 857 (N.D.1986). For example, that special expertise has long been recognized by this court in identifying substances such as marijuana:

"Where a deputy sheriff's training had taught him to detect the odor of burning marijuana, and the odor coming from a window of a parked car, which was opened as he approached, was recognized by the officer as that of burning marijuana, the officer had probable cause to search the automobile for marijuana." *State v. Binns*, 194 N.W.2d 756 (N.D. 1972), Syllabus by the Court ¶ 1.

See also 1 W. LaFave, *Search and Seizure* § 3.2(c) (1987).

That expertise has also been recognized as a basis for probable cause in instances involving traffic patterns which indicate drug trafficking [*State v. Ronngren*, 361 N.W.2d 224 (N.D.1985) ], and, in the case most similar to this one, in an instance in which a police officer testified that based upon his experience he knew that persons who purchase firearms generally maintain those firearms in their residences along with receipts, invoices, sales slips, or other papers evidencing the purchase and transfer of the firearms. *State v. Metzner, supra.* Other jurisdictions have reached a similar result. See, e.g., *United States v. Fannin*, 817 F.2d 1379 (9th Cir.1987) [agent's firsthand knowledge of defendant's involvement in drug trafficking gave him probable cause to believe that evidence of the crime might be found in defendant's residence; therefore, magistrate had a substantial basis for finding probable cause and issuing warrant to search defendant's residence]; *State v. Seven*, 755 P.2d 747 (Or.Ct.App.1988), review denied 307 Or. 101, 764 P.2d 553 (1988).

In *State v. Metzner, supra*, we observed that evidence of a crime alone does not furnish probable cause to search a suspect's home:

"Probable cause to believe that [a defendant] had committed a crime does not, however, establish probable cause to search his house for evidence of that crime. In order to justify the search there must have been a nexus between the house to be searched and the evidence sought." 338 N.W.2d, at 804.

Nevertheless, we ruled that an officer's experienced observation may be a logical element in linking contraband to the residence of an identified criminal.

In *Metzner*, the officer's affidavit developed that Metzner, a convicted felon, had bought firearms using a false first name, identified his home and vehicle, and stated that, based on his experience, the officer believed that firearms are usually kept in the owner's residence. In the warrant search of Metzner's residence, officers seized marijuana in plain view. The trial court suppressed the marijuana, concluding that the warrant was invalid. This court reversed, determining from the affidavit that the magistrate logically could have

concluded that the rifle was likely to be found in Metzner's home. *Id.*, at 805. The court required a nexus between the evidence sought and the place to be searched, but stated: "That nexus, however, need not be established by direct observation." *Id.*, at 804. The officer's experienced observation made the location of the evidence in the accused's home likely.

In contrast to *Metzner*, one court reversed a conviction for possession of contraband found in the defendant's home through a comparable warrant. *United States v. Green*, 634 F.2d 222 (5th Cir. 1981). The court concluded that Green's criminal activities in California did not carry probable cause for investigating his residence in Florida. The court explained the connection between criminal activity and probable cause to search a residence:

"The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *Id.*, at 226.

But the court concluded that this justification did not extend to remote criminal activities.

Our analysis in *Metzner* emphasized that an affidavit for a search warrant "need not establish certainty." "It is only necessary that the facts and circumstances described ... would warrant a man of reasonable caution to believe that the articles sought were located 'at the place to be searched.'" *Id.*, at 804. We recently repeated this guidance:

"In determining whether or not sufficient evidence was presented to the county court to establish probable cause, we are guided by the following standard:

" 'Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place.'

"*State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988); *see also State v. Handtmann and Fuhrman*, 437 N.W.2d 830, 834 (N.D.1989)." *State v. Dahl*, 440 N.W.2d, at 718.

But we believe *Metzner* and the cases from other jurisdictions are distinguishable on their facts. In *Metzner*, the officer's affidavit revealed that he was a special agent with the Bureau of Alcohol, Tobacco, and Firearms of the United States Treasury Department for 11 years, that during that time he investigated numerous violations of the Federal firearms laws and was familiar with the laws and regulations promulgated thereunder; that the residence to be searched was occupied by a person who was in possession of a firearm contrary to law; and that as a result of over 11 years of experience investigating the Federal firearms laws and training as a special agent of the Bureau, he knew that persons who purchase firearms generally maintain those firearms in their residences along with receipts, invoices, sales slips, or other papers evidencing the purchase and transfer of these firearms. The affidavit further described in detail the residence, its location, the purchase of the firearm by Metzner, the fact that he had left the store where he purchased the firearm in a certain vehicle and that that vehicle was parked in front of that residence on a given day when the officer viewed the residence and that Metzner had lived in the residence for over one year.

In contrast, here the portion of the affidavit of Officer Cleveland upon which the State relies on appeal indicates that in Cleveland's training and experience individuals who routinely deal with or sell controlled substances normally keep a supply on hand for sale and do maintain records or other documentation of their controlled-substance transactions and that the money given to Mische for drugs would be found in his possession "or in the residence at

2524 Hillview Avenue, Bismarck, North Dakota." It is Officer Cleveland's affidavit which the State argues the trial court ignored but the Cleveland affidavit connects Mische specifically with the Bismarck, not the Lincoln, residence.

We have no doubt that there was more than ample evidence of Mische's criminal activity at the house in Bismarck where Mische at one time lived with his parents to justify the issuance of a search warrant to search that home. However, it was not until the officers searched that home and found no contraband that they discovered or acknowledged that Mische lived in a trailer in Lincoln. They had no actual knowledge of any activity at the trailer home in Lincoln. Probable cause to believe that Mische committed a crime does not establish probable cause to search his home for evidence of that crime. *State v. Metzner, supra.*

Thus, rather than supporting probable cause that Mische kept drugs at his Lincoln residence the Cleveland affidavit may actually indicate the opposite, i.e., that Mische used his parents' Bismarck residence from which to deal and to keep his contraband. Although all the previous indications recited in both Officer Cleveland's and Officer Becker's affidavits connected Mische with the Bismarck residence, it was only when they found nothing but the Inositol there and learned that Mische was purchasing a trailer home in Lincoln that they attempted to connect Mische's suspected activities with that residence rather than the one in Bismarck. The only connection they could produce is the general contention in Officer Becker's affidavit that individuals who regularly deal in controlled substances keep those substances at their residences; but in view of the activities linking Mische with the Bismarck residence, that conclusion, without further substantiation, appears to have been highly suspect. There is nothing in either affidavit, as there was in *Metzner*, to indicate the officers had verified the information concerning Mische's purchase of a home in Lincoln, whether he was presently living there, etc.

Furthermore, the last paragraph of Officer Becker's affidavit alleges that he received information from an informant "that Brian Mische sells controlled substance in Lincoln, North Dakota. Other information given by that informant has been verified. This information was received April 10, 1988. In February, 1988 another confidential informant gave information that Brian Mische was selling controlled substances from his home in Lincoln, North Dakota. This informant has also supplied other information which has been verified."

We agree with the trial court that this allegation is nothing more than conclusionary information provided by unidentified people. No knowledge of the affiant of any drugs at the Lincoln home appears in the affidavit and there is no way to gauge the informant's credibility. Significantly, it is apparent that Officer Cleveland's affidavit, of which Officer Becker stated he was aware, established probable cause to search the Bismarck residence and that the Bismarck residence was where the officers believed the contraband would be found. Officer Becker indicates that in February of 1988, two months earlier, an informant gave information that "Mische was selling controlled substances from *his* [Mische's] *home* in Lincoln, North Dakota." Despite that information, the officers sought a search warrant for the contraband at the Bismarck residence with which the evidence linked Mische. Only after finding nothing there did they obtain a warrant for the Lincoln residence, although no investigation concerning the Lincoln residence had theretofore been undertaken notwithstanding the information Officer Becker alleged he received two months earlier that Mische was dealing from his home in Lincoln. It seems apparent that after the search of the Bismarck residence did not reveal the contraband, the officers were on a "fishing expedition" prohibited by the Fourth Amendment.

Similar distinctions exist between this case and the other cases such as *Fannin, supra,* which recognize the use of the officer's expertise that contraband will be found in the defendant's residence to establish probable cause. In *Fannin* the offi-

cer's affidavit indicated 14 years' experience, participation in more than 500 investigations of Federal narcotics and financial investigations and more than 100 searches of premises owned or used by traffickers in narcotics. More significantly, however, there was no confusion as to where Fannin lived nor do the facts indicated the officers were engaged in a "fishing expedition."

In *Seven, supra,* although only the officer's allegation that persons engaged in criminal drug activity keep the contraband in their residences connected the specific residence to be searched to any drug activity, the affidavit did allege long involvement in illegal drug activity by the individuals and further alleged that the individuals had engaged in illegal drug activity at their previous residences.

We do not conclude that general allegations that contraband may be kept at the residence of the person involved cannot be considered in establishing probable cause to issue a warrant. However, in view of the special protection given to the home by the Fourth Amendment to the United States Constitution and Article I, Section 8, of the North Dakota Constitution, something additional and more objective than the facile conclusion that contraband is ordinarily kept in the home should be required to establish probable cause to search that home, particularly where, as here, it is apparent that the officers believed the contraband was in a particular place, the Bismarck residence, and that only after a search of that residence did not reveal the contraband did the officers rely upon their training and knowledge to justify the search of the Lincoln residence.

■ In view of Mische's activities, the officers may very well have been suspicious that contraband was present in any place he frequented. But suspicion, without anything more specific, does not amount to probable cause to search the Lincoln residence. *State v. Handtmann,* 437 N.W.2d 830 (N.D.1989). In *Handtmann,* we observed that although we adopted the totality-of-the-circumstances test, we also had cautioned that bare conclusions, without elaboration of the underlying circumstances supporting those conclusions, are insufficient to prove probable cause. We concluded that statements that the defendants had drugs at their residences, without some elaboration of the underlying basis for those statements, were insufficient to establish probable cause. Here, although there is considerably more elaboration of the activities of the defendant, there is little more than a conclusion that drugs were kept at the Lincoln residence. The warrant is a warrant to search a place not a person. We conclude that under the totality-of-the-circumstances test there was insufficient probable cause to issue a warrant to search the Lincoln residence.

■ The State argues, alternatively, that if the warrant to search the trailer home in Lincoln was not supported by probable cause, the order suppressing the evidence gathered from that search should nevertheless be reversed under the "good faith" exception adopted by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We have heretofore left open the question of whether or not to adopt the *Leon* exception. See *State v. Thompson,* 369 N.W.2d 363 (N.D.1985). We continue to leave open that question for if the good-faith exception were to be adopted we would not apply it here. As we have noted above, at least one of the officer's affidavits indicated he had knowledge two months before that Mische was selling controlled substances in his home in Lincoln; nevertheless, only after alleging in an affidavit in support of a search warrant for the residence in Bismarck that the contraband would be found there and, not finding it there, did the officers allege in seeking another warrant that the contraband would be found in the Lincoln home and, despite their prior information, no investigation concerning the Lincoln residence had been undertaken prior to seeking the warrant. These factors indicate the officers were, at that stage of the proceedings, indulging in speculation which does not create probable cause and, in this case, fatally weakens the

inference to be drawn from the allegation that drug dealers keep the contraband at their residence which is the only possible inference to support probable cause to search the Lincoln residence. Under these circumstances we could not sustain the warrant for the affidavit is "so lacking in indicia of probable cause" to search the Lincoln home that it would be unreasonable for the officers to rely upon it. *State v. Thompson, supra,* at 372.

The order of the district court is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE and LEVINE, JJ., concur.