STATE of North Dakota, Plaintiff
and Appellee,

v.

Timothy A. BIRK, Defendant
and Appellant.

Cr. No. 910150.

Supreme Court of North Dakota.

April 21, 1992.

Patricia L. Burke (argued), State's Atty., Bismarck, for plaintiff and appellee.

Michael R. Hoffman (argued), Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

Timothy A. Birk appeals from a judgment of conviction entered on a conditional plea of guilty under Rule 11(a)(2), N.D.R.Crim.P., to manufacturing a controlled substance, *i.e.*, marijuana. Birk asserts that the trial court erred in denying his motion to suppress the incriminating evidence because there was a lack of probable cause for a warrant to search his home. We disagree and, accordingly, we affirm the judgment of conviction.

The sole basis for issuance of the search warrant was the November 21, 1990, sworn affidavit of Bismarck police officer Roger Becker, who stated:

"I.

"That I am a Bismarck police officer and have been so employed for 9 and ½ years.

"That your Affiant has had approximately seventeen years in law enforcement and has received training at the North Dakota Basic Law Enforcement Academy, as well as numerous hours of training in the field of narcotics enforcement and identification through the North Dakota Drug Enforcement Unit and the Federal Drug Enforcement Agency.

"That your Affiant is presently assigned to detectives, Narcotics Division, and has been so assigned for over three years.

"II.

"That on November 21, 1990, at approximately 4:30 your Affiant received a call from an anonymous citizen who provided information to your Affiant regarding a Timothy Birk. This individual indicated that Timothy Birk lives on Northwest Drive, Bismarck, North Dakota, between Trailer No. 112 and 116. The caller was not able to be specific as to the number because he said that trailer did not have a house number on it. The individual indicated that Timothy Birk drives a red Camaro, and that it was presently in the driveway of that address at that time. The individual also indicated that Timothy Birk has a Harley Davidson motorcycle, unknown model. This person indicated that Timothy Birk is presently unemployed, but that according to the caller, he had previously worked for the City of Bismarck Street Department and was seen driving a yellow city truck. According to the caller, Timothy Birk has a green pickup truck for sale parked outside of the residence on Northwest Drive, Bismarck, North Dakota. The caller advised your Affiant that the caller has known Timothy Birk for a period of time and is aware of Timothy Birk's previous drug conviction.

"III.

"According to what the caller told your Affiant, the caller was personally present at the Timothy Birk residence as previously described on November 21, 1990, and observed a number of people coming and going. That while the caller was at the residence, the caller observed what appeared to be marijuana on a plate in the living room and estimated the amount to be approximately ⅛ of an ounce and also observed a triple beam scale and approximately ¼ pound of marijuana. According to the caller, while at the Birk residence he heard Timothy Birk and other individuals talking about crank that they had to get rid of at $30.00 per quarter gram, $60.00 per half gram.

"IV.

"This caller also provided the following verifying facts: (a) Timothy Birk had a cousin by the name of Anthony (Tony) who was just recently arrested for shoplifting at Target. The caller further de-

scribed Timothy Birk as being approximately thirty years of age, 6'1" to 6'3", shoulder length black hair, with a mustache, and weighing approximately 220 to 240 pounds. This caller also indicated that while he was present at the Timothy Birk residence Timothy Birk mentioned the name of Dennis.

"V.

"That your Affiant has verified that Timothy Birk does own and drive a 1971 Chevy Camaro, red in color, plate no. BTL552, and that his date of birth is October 17, 1959. Your Affiant has further verified that Timothy Birk does live at 114 Northwest Drive, Bismarck, North Dakota, and that he does possess a Harley Davidson motorcycle. That your Affiant has personally conducted surveillance and has reviewed the surveillance and intelligence reports of other officers regarding Timothy Birk over the last several years. Your Affiant is also aware that Timothy Birk was convicted of possession of cocaine in 1986. Your Affiant has also verified that a cousin of Timothy Birk named John A. (Anthony) Morse was arrested on November 20, 1990, for shoplifting at Target.

"VI.

"That your Affiant has knowledge of various police contacts from a number of citizen calls that Timothy Birk has been dealing in controlled substances. Your Affiant has personally observed on July 31, 1990, a number of individuals going to the Timothy Birk residence for short periods of time and then leaving. Based on your Affiant's training and experience this type of visitor pattern as observed by your Affiant and reported in the telephone calls is typical and indicative of trafficking in controlled substances.

"VII.

"That on March 13, 1990, a confidential informant who has provided reliable information to your Affiant on numerous occasions, advised your Affiant that she had taken another individual to the Timothy Birk residence. According to the confidential informant, the other individual smoked marijuana while at the Timothy Birk residence and that individual advised the confidential informant that Timothy Birk had plenty of marijuana on hand. That your Affiant is aware through police intelligence that a primary associate of Timothy Birk and frequent visitor to the residence of Timothy Birk at 114 Northwest Drive, Bismarck, North Dakota, is Dennis Beglau, a known and convicted drug trafficker and user. Your Affiant has also received information in July of 1990 that Timothy Birk has kept up to three pounds of marijuana in his residence."

On the day this affidavit was given, the county court magistrate authorized the search of Birk's residence for "controlled substances, books, notes, and other documentation regarding the use, possession, or sale of controlled substances and drug paraphernalia." The subsequent search turned up marijuana, marijuana plants and growing apparatuses, a triple beam scale, and a cutting agent normally used for controlled substances, and other drug paraphernalia.

■　Probable cause to search does not require a prima facie showing of criminal activity. *State v. Berger*, 285 N.W.2d 533, 536 (N.D.1979); *State v. Mertens*, 268 N.W.2d 446, 450 (N.D.1978). Rather, under the Fourth Amendment to the United States Constitution and Article I, § 8 of the North Dakota Constitution, probable cause to search "exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988).

The problem of determining the existence of probable cause to issue a search warrant is increased when the affiant has obtained his information through an informant. *See State v. Schmeets*, 278 N.W.2d 401, 406 (N.D.1979). We have said that information supplied by an anonymous informant cannot alone establish probable

cause for a search warrant if the tip provides virtually nothing from which one might conclude that the informant is honest or that his information is reliable, or if the information provides no indication of the basis for the informant's predictions regarding a defendant's criminal activities. *State v. Thompson*, 369 N.W.2d 363, 367 (N.D.1985).

In *Ringquist, supra*, 433 N.W.2d at 211, we adopted the totality-of-the-circumstances test formulated by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for determining the existence of probable cause when information from an informant is involved. In doing so, we abandoned the former *Aguilar–Spinelli [Aguilar v. State of Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)], two-pronged test for probable cause in informant cases. *See State v. Schroeder*, 450 N.W.2d 423, 425 (N.D.1990). This is not to say that the *Aguilar–Spinelli* criteria are now irrelevant; rather, "the guidelines provided by *Aguilar–Spinelli* have been, and still will be, helpful for an informed decision by a magistrate; ..." *Ringquist, supra*, 433 N.W.2d at 213. Thus, the reliability of an informant remains pertinent to a determination of whether probable cause exists for the issuance of a warrant based upon that informant's statement. *State v. Dahl*, 440 N.W.2d 716, 718 (N.D.1989). As we said in *State v. Mische*, 448 N.W.2d 415, 417 (N.D. 1989), "[t]he basis of knowledge of an informant and the veracity of an informant are still relevant, but are more flexibly evaluated so that strength in one aspect can balance deficiencies in the other." For example, when law enforcement officers have verified part of the informant's information by independent investigation, the corroboration lends credence to the remaining unverified information. *Schmeets, supra*, 278 N.W.2d at 408. The Supreme Court has explained:

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates, supra*, 462 U.S. at 238–239, 103 S.Ct. at 2332.

Thus, affidavits executed in support of a search warrant are to be tested in a commonsense and realistic fashion, and not in a hypertechnical manner. *State v. Klosterman*, 317 N.W.2d 796, 801 (N.D.1982). In other words, all information for probable cause must be considered together, rather than analyzed on a piecemeal basis. *Mische, supra*, 448 N.W.2d at 418.

We have often warned that sufficient information, rather than "bare-bones" information, must be presented to the magistrate to allow the magistrate to determine probable cause. *Schroeder, supra*, 450 N.W.2d at 425; *State v. Dove*, 182 N.W.2d 297, 300 (N.D.1970). Suspicion, without anything more specific, does not amount to probable cause to search. *Mische, supra*, 448 N.W.2d at 422. Although the use of a suspect's reputation, with other evidence, can support a determination of probable cause [*State v. Dymowski*, 458 N.W.2d 490, 497 (N.D.1990)], mere statements of reputation or unsupported conclusions and allegations, without some elaboration of the underlying circumstances for those conclusions or statements, are insufficient to establish probable cause. *State v. Handtmann*, 437 N.W.2d 830, 835 (N.D. 1989). *See also Mische, supra*, 448 N.W.2d at 418; *Schmeets, supra*, 278 N.W.2d at 407.

Whether probable cause exists is a question of law. *Mische, supra*, 448 N.W.2d at 417. We generally give deference to a magistrate's determination of probable cause, and if there is a substantial basis for the magistrate's conclusion that probable cause exists, it will not be disturbed. *Dymowski, supra*, 458 N.W.2d at

498. However, no deference is given to a magistrate's determination of probable cause when the determination is based on conclusory statements. *Handtmann, supra,* 437 N.W.2d at 836.

█ Birk asserts that there was no probable cause for issuance of the warrant in this case, primarily because the police failed to conduct personal surveillance on November 21, 1990, to attempt to corroborate the anonymous caller's tip that illegal activity was taking place at his residence, and because insufficient details were given by the anonymous caller regarding any illegal activities occurring on that date.

█ It is true that the police conducted no surveillance of Birk's residence on November 21, 1990. However, Becker stated in the affidavit that he had personally observed on July 31, 1990, a number of short-term visitors to the residence, which is indicative of drug trafficking. Although probable cause cannot be founded upon stale information [*Ringquist, supra,* 433 N.W.2d at 213], "corroborative information need not be current for it to be properly considered by the magistrate so long as it relates to prior conduct sufficiently similar to the acts in question." *Commonwealth v. Weidenmoyer,* 518 Pa. 2, 539 A.2d 1291, 1295 (1988). Moreover, Becker was aware that Birk had been convicted of possession of cocaine in 1986 and was aware of a number of "citizen calls" in the past, as well as information from another informant in March 1990, indicating that Birk was dealing in controlled substances. A magistrate may properly rely on a law enforcement officer's knowledge of a suspect's reputation in assessing the reliability of an informant's tip. *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971) (plurality opinion); *Dymowski, supra,* 458 N.W.2d at 497. *See also Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960) ["that petitioner was a known user of narcotics made the charge against him much less subject to scepticism [sic] than would be such a charge against one without such a history."].

This case is somewhat similar to *Ringquist, supra.* In *Ringquist,* an anonymous first-time informant called a police officer and furnished detailed information of drug trafficking at a Dickinson apartment. Another officer independently confirmed several pieces of information given by the informant about the defendant, all of which was outwardly innocent. He also conducted personal surveillance, which revealed nothing incriminating. The officer also confirmed that the defendant's roommate had pled guilty six years earlier in 1981 to possession of marijuana and that the defendant had been arrested in California in the late 1960s or early 1970s on delivery or possession charges relating to LSD or heroin. The officer testified that approximately four months earlier he had received information from two other confidential informants. One informant, who had provided reliable information in the past which resulted in a conviction, essentially told the officer that the defendant and his roommate sold controlled substances. The other informant also related to the officer information that implicated the defendant in drug trafficking.

We held that there was probable cause to issue the search warrant, noting that although the four-month-old information did not identify separate and specific instances of drug trafficking, "we believe the magistrate and police could properly rely on that information to the extent that it established that [the defendant and his roommate] were involved with drug trafficking, a matter which was corroborated by their prior records." *Ringquist, supra,* 433 N.W.2d at 214. This evidence was not stale, we said, because "when corroborated by the information supplied by the anonymous informant's tip, it established protracted and continuous activity which is inherent in drug trafficking." *Ringquist, supra. See also State v. Mondo,* 325 N.W.2d 201, 204 (N.D.1982); *State v. Boushee,* 284 N.W.2d 423, 430 (N.D.1979).

In this case, the caller described Birk, his residence, and his vehicles. Becker stated that he had personally surveilled the residence in the past and that he verified Birk's address, vehicles, and date of birth.

The anonymous caller's description of people coming and going to and from the defendant's residence on November 21, 1990, matched Becker's personal observations of a few months earlier. This activity was described by Becker, a trained narcotics detective, as "typical and indicative of trafficking in controlled substances." *See Mische, supra,* 448 N.W.2d at 419 ["courts must take into account inferences and deductions that a trained and experienced officer makes."] The caller was aware of the defendant's prior drug conviction, and this fact was verified by Becker. The caller was also aware that Birk was acquainted with a person named "Dennis," and Becker, through police intelligence, verified that Dennis Beglau, a known drug trafficker and user, was an associate of Birk. Significantly, the caller also informed Becker that Birk's cousin, "Anthony (Tony)," had recently been arrested for shoplifting at Target. Becker verified that Birk's cousin, "John A. (Anthony) Morse," was arrested on November 20, 1990, for shoplifting at Target, the day before the anonymous informant called Becker. It is likely that in order for the caller to know this information, the caller had to have known Birk fairly well because this information was not generally known to the public at large. Further, the temporal proximity between the shoplifting arrest and the informant's call increases the possibility that the informant visited with Birk sometime between November 20 and 21, 1990. "An informant known to be right in some factual assertions is more likely to be right about other facts communicated." *United States v. Laws,* 808 F.2d 92, 102 (D.C.Cir.1986) [Footnote omitted]. Thus, this information tended to substantiate the probable truthfulness of the caller's statement that he was in Birk's residence on November 21, 1990, and that he saw controlled substances there.

The caller described with some particularity the types of controlled substances and paraphernalia that were allegedly present in Birk's home. The caller stated that about one-eighth of an ounce of marijuana was on a plate in the living room and that there was also an additional quarter pound of marijuana and a triple beam scale in the residence. The caller also stated that he heard Birk and others discussing the sale of crank and further related the sales prices. Given all of the circumstances, the magistrate could reasonably determine that this tip likely emanated from a first-hand observation.

The other information in the affidavit regarding citizen calls and the prior communication with a confidential informant who indicated that Birk was selling controlled substances, although lacking in detailed indicia of reliability, could nevertheless be considered by the magistrate. There is no indication that these unidentified persons were collaborating. When apparently unassociated persons of unknown reliability all report the same fact, there is an increased probability that the fact is true. *See Laws, supra,* 808 F.2d at 103; *United States v. Hyde,* 574 F.2d 856, 863 (5th Cir.1978). This additional information tended to bolster the statements of the anonymous caller regarding the activity at Birk's residence as well as Birk's reputation as someone engaged in the use or trafficking of controlled substances.

The " 'resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " *Mondo, supra,* 325 N.W.2d at 204 [quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965)]. As we explained in *Ringquist, supra,* 433 N.W.2d at 215–216:

"Although each bit of information in this case, by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, ' "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... [which is not weighed in] individual layers but [in] the 'laminated' total." ' *United States v. Edwards,* 577 F.2d 883, 895 (5th Cir. 1978) (en banc), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978), *quoting Smith v. United States,* 358

F.2d 833, 837 (U.S.App.D.C.1966), *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967)."

We conclude that, under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed for issuance of a warrant to search Birk's residence. Therefore, we further conclude that the trial court did not err in denying Birk's suppression motion. The judgment of conviction is affirmed.

JOHNSON, J., concurs.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision. A rehearing was held on April 13, 1992, after Justice J. PHILIP JOHNSON was appointed to the Court.

VANDE WALLE, Justice, concurring specially.

I believe the glue that holds together the affidavit offered in support of the application for the search warrant and lends the necessary credibility and reliance to the information given by the informant is found in Paragraphs IV and V of the affidavit. Paragraph IV states the caller told Officer Becker that Birk had a cousin by the name of Tony who was recently arrested for shoplifting at Target, described Tony and stated that while he was present at Birk's residence Birk mentioned the name of Dennis. In Paragraph V Officer Becker stated he had verified that a cousin of Timothy Birk named John A. (Anthony) Morse was arrested on November 20, 1990, the day prior to the call from the informant, for shoplifting at Target.

Officer Becker further stated in the affidavit that he is aware through police intelligence that a primary associate and frequent visitor to the Birk's residence is Dennis Beglau, "a known and convicted drug trafficker and user." The proximity between the call, the information relative to the cousin, its verification, the information concerning the marijuana, and the identification of "Dennis" give credibility and reliability to the other information given by the informant. Were it not for this information and verification, I would agree with the dissents.

But, I do not agree with Justice Levine that this is easily obtainable information as is the ownership of a motorcycle, place of employment, etc. The information indicates a knowledge of Birk which would not be held by a casual observer or acquaintance but only by a person who has intimate knowledge of the defendant. The dissent indicates that the knowledge is "innocent" information. I do not understand that the information which lends reliability and credibility to the information of illegal activity must, itself, be information of illegal activity. Rather, it is my understanding that the information, although it may be information of "innocent" activity must be of a nature to indicate that the information of illegal activity is reliable. *Cf. State v. Ringquist*, 433 N.W.2d 207 (N.D.1988) [Although some information may have an innocent explanation, probable cause is the sum total of layers of information.] Any information can be "made up" and it is the responsibility of the police officers to verify it. In this case, the police did verify the information which I believe is sufficiently significant to prove the credibility and reliability of the informant as to the illegal activity. I agree they could have done more, but that is not the test.

JOHNSON, J., concurs.

MESCHKE, Justice, dissenting.

I respectfully dissent.

In *Aguilar v. Texas*, 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court reversed a conviction and suppressed evidence obtained by a search warrant based upon the affidavit of two officers saying:

"Affiants have received reliable information from a credible person and do believe that [drugs and] paraphernalia are being kept at ... described premises for

the purpose of sale and use contrary to ... law."

In *Spinelli v. United States*, 393 U.S. 410, 414, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969), the Court reversed a conviction and suppressed evidence obtained by a search warrant based upon an affidavit by an FBI agent saying that the FBI "has been informed by a confidential reliable informant that William Spinelli is operating" an illegal gambling business. In each case, the informant's veracity and basis of knowledge was uncorroborated. The affidavits were unsupported and conclusory. That is true here, too.

In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court reinstated a drug conviction resulting from evidence obtained by a search warrant based upon an affidavit of an officer that the police had received an anonymous letter that accused the defendants of illicit drug transportation and that predicted a specific drug-running trip by the defendants from Illinois to Florida by car, airplane, and return to Illinois, each on specific days. The Court declared that the prior independent, *Aguilar–Spinelli* prongs of "veracity" and "basis of knowledge" were still relevant but that they should be considered together as circumstances whose totality must be appraised. "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. at 233, 103 S.Ct. at 2329. The Court concluded that police "corroboration of major portions of the [anonymous] letter's *predictions* provides just this probability." 462 U.S. at 246, 103 S.Ct. at 2336. (Emphasis supplied). In *Gates,* additional police surveillance of the *predicted* activities of the defendants supplied the corroborative indicia of reliability. Here, there was no contemporary police surveillance.

In *State v. Ringquist,* 433 N.W.2d 207 (N.D.1988), we adopted and applied the *Gates* totality-of-the-circumstances standard to uphold a drug conviction resulting from evidence secured by a search warrant based upon an affidavit that the officer received information from an anonymous informant, whose reliability was corroborated by following police surveillance *and* by information from two demonstrably reliable and *known* confidential informants. I joined in that result.

In *State v. Handtmann,* 437 N.W.2d 830, 835 (N.D.1989), we reversed a conviction and suppressed evidence secured by a warrant based on information that

> represents only unsupported conclusions and statements about his reputation of being "suspected of trafficking narcotics" which, without some elaboration of the underlying circumstances for those conclusions and statements, are insufficient to support a determination that probable cause existed.

*See State v. Mische,* 448 N.W.2d 415 (N.D. 1989) (affirming suppression); *State v. Schroeder,* 450 N.W.2d 423 (N.D.1990) (affirming suppression). *Compare State v. Dahl,* 440 N.W.2d 716, 718 (N.D.1989) ("There is no presumption of reliability for [a confidential] informant as compared to information given by an upstanding citizen of the community. That reliability must be established.").

Today, the majority affirms a drug conviction resulting from evidence secured by a search warrant based upon the affidavit of an officer who received anonymous information, unverified by anything except secondhand rumors spliced with the suspect's unsavory reputation and disreputable associations. To me, this does not corroborate the reliability of either the veracity or the basis of knowledge of the unknown informant.

Because I believe today's decision goes too far in allowing a warrant to be issued upon conclusory and unsupported information, without a satisfactory showing of reliability, I respectfully dissent.

LEVINE, Justice, dissenting.

"Home is where the heart is," said Pliny the Elder. Home is also the place where police need a warrant based on probable cause, if they are going to enter uninvited to search. In this case, the basis for that

probable cause is the information provided by an anonymous caller over the telephone.

We know the anonymous caller knew Birk's place of residence, the auto he drove and its location at the time of the telephone call. We know also that the anonymous caller knew Birk had a motorcycle, was unemployed and where he worked before. The caller had additional information that Birk had a green pickup for sale which was parked at Birk's residence. The caller apparently knew Birk and knew of his previous drug conviction. The caller also knew Birk's cousin.

All of the above is innocent information that really has little to do with whether or not the caller actually was "personally present" in Birk's residence and actually "observed a number of people coming and going" and "marijuana on a plate in the living room" of approximately ⅛ of an ounce and a "scale and approximately ¼ pound of marijuana." It is one thing to provide otherwise innocent facts which would only be known to one with close access to the subject; it is quite another to provide information consisting of "easily obtainable facts and conditions existing at the time of the tip." *State v. Thompson*, 369 N.W.2d 363, 370 (N.D.1985); *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

The problem I have is with the veracity of the anonymous caller and the reliability of the information he or she provided concerning the illegal drug activity. Anyone with enough knowledge about a person can make that person the target of a prank or a grudge by fabricating a "tip" like the one in this case. All the police did here was verify that the easily obtainable information regarding Birk's automobile, residence and possession of a motorcycle was accurate. The police conducted no current surveillance, as they did in *State v. Ringquist*, 433 N.W.2d 207 (N.D.1988), and had no recent corroborating information, as they did in *Ringquist*. Nor was there surveillance or observation of either "unusual civilian or vehicular traffic at the address" or "very short visits characteristic of drug trafficking." *United States v. Gibson*, 928

F.2d 250, 253 (8th Cir.1991). Instead, the police relied on rumor and stale information. As a policy matter, we should not condone lackadaisical police work.

It is true that the informant had enough good sense to give accurate vital statistics so that when the police checked the obvious, there were no inconsistencies. And, the obvious is all the police verified here. Police corroboration of easily obtained facts and conditions, which by themselves are inadequate for probable cause, does not establish the caller's credibility. *State v. Albrecht*, 465 N.W.2d 107 (Minn.App.1991). Conducting no surveillance and little investigation, the police relied on old suspicion which, as the majority concedes, is not enough to justify a search warrant. They relied also on stale information. In *Ringquist*, we concluded that one-month-old information from a reliable confidential informant about drug trafficking was reliable information. In this case, the majority, in effect, concludes that information that is over eight months old is similarly reliable. I disagree. First of all, the "information" received eight months earlier was nothing more than rumor. But even if it had been other than rumor, it should make no difference in this case. After all, the police did not use the eight-month interval to corroborate the "information" earlier received or to maintain surveillance of the defendant's activities to support the issuance of the warrant. *Compare with Cauchon v. United States*, 824 F.2d 908 (11th Cir.1987), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987); *United States v. Amorin*, 810 F.2d 1040 (11th Cir.1987). Here, the police did nothing.

While the majority correctly notes that we give deference to a magistrate's determination of probable cause, we only do so when there is a factual dispute. *See State v. Placek*, 386 N.W.2d 36 (N.D.1986); *State v. Ronngren*, 361 N.W.2d 224 (N.D.1985). Here, there is no factual dispute. The question is whether the undisputed facts constitute probable cause to justify a search warrant. That is a question of law which we should review anew. *See United States v. Alvarez*, 899 F.2d 833 (9th Cir. 1990), *cert. denied*, — U.S. ——, 111 S.Ct.

671, 112 L.Ed.2d 663 (1991); *United States v. McConney,* 728 F.2d 1195 (9th Cir.1984), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

I thought *Ringquist* went overboard in abandoning the *Aguilar–Spinelli* guidelines to convince everyone that in North Dakota, we do not observe hypertechnicalities in determining the question of probable cause. I think this case goes overboard in upholding a search warrant for a home that is based on information not shown to be reliable from an informant not shown to be credible. In so doing, we assure police officers that in North Dakota, slipshod police work is good enough. We also establish a rule that, instead of requiring more corroboration to establish an anonymous informant's credibility, requires less. I suppose that means that in North Dakota, the credo of Mies Van Der Rohe, the international style architect, that "less is more" reigns not only in the field of architecture but also in the Fourth Amendment arena of probable cause.

I respectfully dissent.