**BANK OF STEELE, Plaintiff and Appellee,**

v.

**Ernest R. LANG, Defendant and Appellant.**

**Civ. No. 880279.**

Supreme Court of North Dakota.

June 6, 1989.

Kelsch, Kelsch, Ruff & Austin, Mandan, for plaintiff and appellee; argued by Arlen M. Ruff.

Ernest R. Lang, McKenzie, pro se.

ERICKSTAD, Chief Justice.

Ernest Lang appeals from a district court judgment determining that the Bank of Steele ["the Bank"] was entitled to the proceeds of two checks. We affirm.

The background facts of this case have been set out in detail in three prior appeals. *See Bank of Steele v. Lang*, 399 N.W.2d 293 (N.D.1987) ("Lang I"); *Lang v. Bank of Steele*, 415 N.W.2d 787 (N.D.1987) ("Lang II"); *Bank of Steele v. Lang*, 423 N.W.2d 504 (N.D.1988) ("Lang III"). For purposes of this appeal, the following facts are relevant. Lang defaulted on a promissory note to the Bank secured by a security interest in Lang's equipment, livestock, crops, and proceeds, and by a second mortgage on his farmland. The first mortgage on the farmland was foreclosed by the Bank of North Dakota, and the Bank of North Dakota purchased the land at the sheriff's sale and received a sheriff's certificate of sale. The Bank of North Dakota subsequently sold the sheriff's certificate of sale to the Bank of Steele.

Lang defaulted on the promissory note to the Bank of Steele, and the Bank commenced this action seeking a money judgment and foreclosure of its security interest in Lang's personal property. The Bank received judgment in the amount of $122,794.07 and was allowed to foreclose its security interest. A sheriff's sale was held and the judgment was partially, but not wholly, satisfied. The record reveals that over $80,000 remained due and owing on the judgment.

At issue on this appeal are the proceeds of two checks drawn by Kist Livestock Auction. The checks represent payment for cattle sold by Lang in late 1986 and early 1987, and were made payable jointly to Lang and the Bank because the Bank still had a financing statement on file claiming an interest in Lang's livestock and proceeds. On March 15, 1988, at Lang's request, the district court ordered that the Bank file a termination statement pursuant to Section 41–09–43(1), N.D.C.C.[1]

On March 22, 1988, a new execution was issued to the Sheriff of Burleigh County

---

1. Section 41–09–43(1), N.D.C.C., provides:
   "If a financing statement covering consumer goods is filed on or after January 1, 1974, then within one month or within ten days following written demand by the debtor after there is no outstanding secured obligation and no commitment to make advances, incur obligations or otherwise give value, the secured party must file with each filing officer with whom the financing statement was filed, a termination statement to the effect that he no longer claims a security interest under the financing statement, which shall be identified by file number. In other cases where there is no outstanding secured obligation and no commitment to make advances, incur obligations, or otherwise give value, the secured party must on written demand by the debtor send the debtor, for each filing officer with whom the financing statement was filed, a termination statement to the effect that he no longer claims a security interest under the financing statement, which shall be identified by file number. A termination statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record complying with subsection 2 of section 41–09–44, including payment of the required fee. If the affected secured party fails to file such a termination statement as required by this subsection, or to send such a termination statement within ten days after proper demand therefor he shall be liable to the debtor for one hundred dollars, and in addition, for any loss caused to the debtor by such failure."

and on March 29, 1988, the sheriff levied upon the two checks in Lang's possession.[2] On May 17, 1988, Lang filed a motion for release of funds which included a claim of exemption for the proceeds of the checks. Following a hearing, the court on June 20, 1988, issued its order holding that the Bank had validly levied upon the checks and that Lang's attempted claim of exemption was untimely. The court therefore ordered that the Bank was entitled to the proceeds of the checks. Lang has appealed.

■ The primary thrust of Lang's argument on appeal is a reiteration of his assertion, already raised and rejected on prior appeals, that the Bank could not purchase the sheriff's certificate without redeeming. We stated in *Lang II, supra,* 415 N.W.2d at 790–791:

> "We rejected Lang's contention that the Bank was required to redeem rather than purchase the sheriff's certificate in *Lang I.* While we noted that the issue was not properly before us then, we did discuss the applicable law. Our view of the law has not changed. In *Lang I* we stated, 'No law prohibits a corporation, in protecting its security interest in real property, from purchasing an assignment of the sheriff's certificate of sale to the real property.' 399 N.W.2d at 296. Thus a creditor holding a subordinate lien upon property which has been foreclosed upon does not have to redeem, and the creditor may make an outright purchase of the sheriff's certificate. Just as any stranger to the transaction may purchase a sheriff's certificate, so may a creditor with a lien on the property. Thus the Bank did not have to redeem."

Our resolution of this issue on the prior appeals has become the law of the case and thus it is not open for reconsideration on this appeal. *E.g., Tom Beuchler Construction, Inc. v. City of Williston,* 413 N.W.2d 336, 338–339 (N.D.1987); *Newman*

*Signs, Inc. v. Hjelle,* 317 N.W.2d 810, 813–814 (N.D.1982).

■ Many of Lang's other contentions on appeal appear to be premised upon the erroneous assumption that the Bank acquired the checks through its security interest. The Bank, however, clearly obtained the checks pursuant to a proper execution and levy based upon its valid outstanding judgment against Lang. Although the Bank's security interest did result in the original checks being issued jointly, and thereby tied up the funds for a period of time, Lang has not cited relevant authorities or supplied cogent reasoning as to how that fact affects the Bank's subsequent levy pursuant to its judgment.

■ Lang also claims that he could not have been expected to file a claim for exemptions because at the time the notice of levy was served it had not been determined who had a right to possess those funds. Section 28–21–08, N.D.C.C., provides that levy may be made upon property, or "any interest therein, of the judgment debtor." Clearly Lang had an interest in a check made payable jointly to himself and the Bank. *See State ex rel. Stevenson v. Hatch,* 41 Or.App. 609, 598 P.2d 1234, 1236 (1979) (proper to levy upon debtor's interest in check made payable to debtor and a third party). Lang has cited no relevant authority or supportive reasoning which would suggest a different result.

■ Having been served with a notice of levy, Lang had ten days within which to make a claim of exemptions. Section 28–22–06, N.D.C.C. Lang's attempted claim of exemptions came well after the expiration of the ten-day period, and he does not argue that any extension of the period was appropriate. The Bank having validly levied upon the checks, and Lang having failed to timely claim exemptions, the trial court correctly determined that the Bank was entitled to the proceeds of the checks.

---

**2.** Lang apparently refused to turn over the two checks, claiming that he had lost them. After further proceedings, Kist Livestock Auction redrew the checks on July 5, 1988. Upon order of

the court, Kist again re-drew the checks on July 11, 1988, making them payable to the Clerk of Court, and deposited them with the court.

We have reviewed the other contentions raised by Lang and find them to be without merit. The judgment is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.