**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Wayne DYMOWSKI, Defendant and Appellant.**

Cr. No. 890334.

Supreme Court of North Dakota.

July 6, 1990.

Robert J. Woods (argued), Forest River, for defendant and appellant.

Thomas H. Falck, Jr. (argued), Asst. States Atty., Grand Forks, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Wayne Dymowski appeals from a jury verdict in District Court for Grand Forks County finding him guilty of possession of a controlled substance. Prior to trial, Wayne moved the court for an order suppressing evidence obtained as the result of a search warrant. The motion was denied. Thus, Wayne also appeals the denial of his motion for suppression. We affirm.

On July 16, 1989, Agent Thomas Parker of the United States Customs Service received information from a confidential informant as to a possible drug transaction in Grand Forks, North Dakota. Based upon that information, Agent Parker, in his car, followed two individuals, identified by the informant as those discussing the drug transaction, in another car. The individuals drove to 1101 2nd Avenue North in Grand Forks, which was later identified as Wayne's residence,[1] where Agent Parker observed one of the individuals enter the house. The individual returned to the car a short time later, carrying what appeared to be a brown paper bag about the size of a baseball. Agent Parker followed, in his car, the individuals, in their car, for a short distance further before breaking off surveillance.

After discussion with other Grand Forks law enforcement authorities, Agent Parker filed the following affidavit in application for a search warrant for the house located at 1101 2nd Avenue North, Grand Forks, North Dakota:

"I.

"That your Affiant is an agent with the United States Treasury Department, U.S. Customs Service, presently stationed in the Grand Forks, North Dakota district.

"II.

"That your Affiant has been a law enforcement officer for approximately 14 years.

"III.

"That your Affiant has attended a four month police training academy in Plainfield, Indiana. Your Affiant has further received four months training at the Federal Law Enforcement Training Center at Glynco, Georgia for initial training with the United States Treasury Department. This program provided training in all forms of law enforcement and specifically dealt with criminal investigations. Your Affiant has received training in drug enforcement and has had previous experience in the State of Indiana working on narcotics cases. Your Affiant has previously been assigned to a DEA Task Force on narcotics in the Miami, Florida area for approximately two years.

"IV.

"That your Affiant has been working with a confidential informant in the Grand Forks area who has been providing information relative to violations of federal law. The confidential informant has provided reliable information relative to the use and distribution of a prohibited product within this area. He has assisted your Affiant by making telephone calls to parties trafficking in the prohibited substance on behalf of your affiant. The information provided by the confidential informant will result in the arrest of several individuals relative to importation and distribution of the prohibited substance.

"V.

"Your Affiant advises that on July 16, 1989, the confidential informant contacted your Affiant and advised that he was having car trouble at the Short Stop con-

---

1. Agent Dahl testified that Tracy Dymowski, Wayne's wife, told him that only she and Wayne reside at 1101 2nd Avenue North in Grand Forks.

venience store located on DeMers Avenue in Grand Forks, North Dakota. Upon your Affiant's arrival, the confidential informant advised that while waiting at the store, the confidential informant overheard a telephone conversation between two men at the store and an unknown third party. The one party talking at the Short Stop convenience store on the telephone indicated that he was unable to purchase an entire O.Z. of snow, but that he would be able to take a half ounce and that they could resume their business transactions on a regular basis. The party further indicated that he owed the unknown party on the telephone money from previous transactions and would be attempting to pay that money back.

### "VI.

"Your Affiant advises that he was on his way out to the Short Stop to pick up the confidential informant as the confidential informant overheard the telephone conversation. Your Affiant advises that he observed the two individuals in question leaving the area of the Short Stop store as he picked up the confidential informant. They were driving a newer model red four-door car, possible [sic] a TEMPO with Minnesota license RLK 399. The confidential informant advised your affiant that the two individuals leaving in the motor vehicle were the individuals who had made the telephone conversation relative to the half ounce of snow. Your Affiant is familiar with the term 'snow' being used as another word for cocaine or coke. The confidential informant also advised that the individual on the telephone had told the unknown third party that they would be at the house in approximately two minutes to pick up the snow.

### "VII.

"Your Affiant followed the 1985 red Ford RLK 399, Minnesota to an address at 1101 2nd Avenue North in Grand Forks, North Dakota. Your Affiant observed the passenger in the vehicle who was identified by the confidential informant as the party making the telephone call from the Short Stop convenience store, leave the motor vehicle and enter the residence. He did not appear to be carrying anything with him when he entered the residence. A short time later the same male exited 1101 2nd Avenue North with an unknown female. The male passenger was at that time carrying a brownish object, approximately the size of a baseball in his hand.

### "VIII.

"Your Affiant advises that the male subject re-entered the motor vehicle along with the unknown female and the vehicle departed the area and drove into East Grand Forks, Minnesota where surveillance was halted. This above incident took place between approximately 6:30 p.m. and 7:00 p.m. on July 16, 1989. Your Affiant later ran a motor vehicle check on RLK 399, Minnesota and determined that the owner of the vehicle is a Gerald Duane Ralston of 207 65th Avenue North, Brooklyn Center, Minnesota.

### "IX.

"Your Affiant then turned over the above information to the Grand Forks Police Department and Attorney General's Drug Enforcement Units. Your Affiant believes that the confidential informant in this case has provided accurate information and has never in the past attempted to mislead your Affiant."

Agent Thomas Dahl, after surveillance of Wayne's residence, filed the following affidavit along with Agent Parker's affidavit in application for the search warrant of Wayne's residence:

### "I.

"That your Affiant is a law enforcement officer with the Attorney General's Drug Enforcement Unit and has been so employed for four years. Your Affiant has approximately 13 years in law enforcement experience.

"II.

"That your Affiant has received general and specialized training in the field of criminal investigation through the North Dakota Peace Officers Academy and the North Dakota Attorney General's Office. Your Affiant has received specialized training in the area of drug enforcement through courses provided by the North Dakota Law Enforcement Council, the United States Drug Enforcement Administration and the Minot Police Department. This training has included the observation and identification of substances listed as being controlled substances and training in the field of investigation relative to narcotics violations.

"III.

"Your Affiant advises that on July 17, 1989, Thomas W. Parker, United States Customs agent contacted your affiant relative to an incident that took place in the early evening hours of July 16, 1989 at the Short Stop convenience store on DeMers Avenue in Grand Forks, North Dakota. Your Affiant has reviewed the matter with Thomas W. Parker and has reviewed his attached Affidavit. Your Affiant can provide the following information relative to this incident.

"IV.

"Your Affiant has observed the house in question at 1101 2nd Avenue North in Grand Forks, North Dakota on July 17, 1989 at approximately 12:30 p.m. and observed an individual recognized by your Affiant to be Wayne Dymowski. Your Affiant has previously had contact with Wayne Dymowski during an investigation by the North Dakota Attorney General's Drug Enforcement Unit in the Grafton, North Dakota area. Mr. Dymowski was charged with Possession with the Intent to Deliver approximately nine pounds of marijuana. That case is presently pending in Walsh County, North Dakota. Your Affiant believes that the individual at 1101 2nd Avenue North is the same Wayne Dymowski involved in the Walsh County case.

"V.

"Your Affiant, through the assistance of Officer Richard Duquette of the Grand Forks Police Department has observed a 1971 Chevrolet truck at the residence with North Dakota license CBE 845, which is registered to Gary Dymowski, brother of Wayne Dymowski.

"VI.

"Your Affiant advises that the North Dakota Attorney General's Drug Enforcement Unit has had intelligence and information from confidential informant's previously indicating that Gary Dymowski and Wayne Dymowski, both have been involved in the trafficking of controlled substances within the State and in East Grand Forks, Minnesota.

"VII.

"Your Affiant has received information from Vern Rasmusson of the East Grand Forks Police Department, that Gerald Duane Ralston may be in the East Grand Forks, Minnesota area and that there has been intelligence received which indicates Ralston may be involved in controlled substance violations.

"VIII.

"Your Affiant believes that there is probable cause to believe that violations of the North Dakota Controlled Substances Act may be taking place at 1101 2nd Avenue North in Grand Forks, North Dakota, and that such residence may contain controlled substances, cash obtained as a result of controlled substances transactions and business records of such transactions. Your Affiant therefore asks that a search warrant be issued for the residence at 1101 2nd Avenue North in Grand Forks, North Dakota."

The search warrant was issued on July 17, 1989, and the search was conducted at approximately 6:00 p.m. on that day. The search uncovered seven packets, each con-

taining .02 grams of heroin, a syringe containing traces of heroin, and various items recognized by a United States Customs Agent as drug paraphernalia. The items were found in a dresser drawer which also contained women's undergarments. The bedroom in which the dresser was located contained evidence of both male and female occupants. Following the search, an arrest warrant was issued for Wayne. He turned himself in approximately two weeks later, whereupon he was charged with possession of heroin, a Class C Felony, in violation of sections 19–03.1–05(4)(k), 19–03.1–23(3), and 12.1–32–01(4) of the North Dakota Century Code. Tracy Dymowski, Wayne's wife, was also charged under the same sections. Wayne and Tracy plead not guilty and requested a jury trial. A motion for joinder of Wayne and Tracy to be tried in a joint trial by jury was made by the State and granted by the trial court. Tracy filed a motion resisting the State's motion for joinder, but Wayne did not join in Tracy's motion.

A motion to suppress the evidence found at Wayne's residence as a result of the search was made by Wayne, alleging lack of probable cause to issue a search warrant, prejudice and irrelevance. The trial court granted suppression of certain items of evidence, based upon lack of relevance, but denied that part of the motion which was based on Wayne's allegations of lack of probable cause to justify the search warrant and on Wayne's arguments that certain evidence was unduly prejudicial. On October 18, 1989, Wayne was convicted by a jury of 12 of possession of heroin and sentenced on November 20, 1989, to four years in the North Dakota State Penitentiary. On appeal, Wayne raises the following issues:

"I. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF THE SEARCH OF THE DEFENDANT'S RESIDENCE?

"II. DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON THE GROUND OF INSUFFICIENT EVIDENCE?"

## MOTION TO SUPPRESS

Wayne contends that there was insufficient evidence presented to the magistrate to establish probable cause for the issuance of a search warrant, and therefore the search of his residence violated the Fourth and Fourteenth Amendments of the United States Constitution and Article I, § 8, of the North Dakota Constitution. He argues that the evidence presented to the magistrate was utterly devoid of any details and represented nothing more than "bare bones" conclusory statements. Wayne contends that the informant's basis of knowledge and veracity were not established in the affidavits in support of the warrant and that there was no evidence presented to the magistrate which established that the informant had any actual knowledge of criminal activity at the Dymowski residence. In addition, Wayne argues that there was no evidence of the underlying circumstances which served as the basis for Agent Dahl's conclusions regarding Wayne's drug activities.

The State responds that the magistrate had a substantial basis for determining the existence of probable cause because the detailed statements made in Agent Parker's affidavit were the result of a corroborative investigation of the details of a tip he received from the confidential informant, who had been reliable in the past. Also, Agent Dahl's affidavit was a result of the personal experience and information which Agent Dahl had obtained pursuant to a previous drug investigation involving Wayne.

Pertinent to this issue, about a year ago, we said:

"In determining whether or not sufficient evidence was presented to the county court to establish probable cause, we are guided by the following standard: 'Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable

objects are properly connected with criminal activity and are probably to be found at the present time at an identifiable place.'

*State v. Ringquist,* 433 N.W.2d 207, 212 (N.D.1988); *see also State v. Handtmann and Fuhrman,* 437 N.W.2d 830, 834 (N.D.1989).

"In *State v. Ringquist,* we adopted the totality-of-the-circumstances test for reviewing probable cause under Article 1, § 8, of the North Dakota Constitution. *See State v. Ringquist, supra,* 433 N.W.2d at 211. Our standard is now the same as that required under the Fourth Amendment of the United States Constitution as set forth in *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983):

> 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.'

"We recognize that 'the guidelines provided by *Aguilar–Spinelli* [*Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)] have been, and still will be, helpful for an informed decision by a magistrate;....' *State v. Ringquist, supra,* 433 N.W.2d at 213. However, because we have adopted the totality-of-the-circumstances test, we are no longer governed by the veracity requirements of *Aguilar–Spinelli, supra.*"

*State v. Dahl,* 440 N.W.2d 716, 718 (N.D. 1989).

■ Although we have adopted the totality-of-the-circumstances test, we still require sufficient information, rather than a "bare bones" affidavit to be presented to the magistrate to allow that official to determine probable cause. *State v. Ringquist,* 433 N.W.2d 207, 213 (N.D.1988).

Wayne relies upon *State v. Thompson,* 369 N.W.2d 363 (N.D.1985). In *Thompson,* we affirmed the suppression of evidence discovered pursuant to a search warrant to search the Thompson home. The search warrant had been obtained pursuant to a tip from an anonymous informant. The anonymous informant said that there was a large supply of marijuana in the Thompson home. Other than that information, the informant told the authorities only where the Thompsons lived, their physical descriptions, where they worked, and what they drove. There was no other underlying information to support a probable cause finding that there was marijuana in the home. There also was very little follow-up investigation and no surveillance prior to the obtaining of the search warrant. The informant had said that she had given a previous tip which had resulted in an arrest and conviction, but there was nothing in the affidavit in application for the search warrant which tended to prove that such information was accurate. We said:

> "Nothing stated in the affidavit in the instant case indicates that the anonymous informant was privy to very personal information about the defendants such as in *Gates* [*Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], which when verified would lend credence to the unverified alleged criminal activity.
>
> \* \* \* \* \* \*
>
> "In our view the magistrate was not provided enough meaningful information to make an informed judgment on the question of the anonymous informant's past performance. For example, it would have been meaningful under the circumstances of this case to tell the magistrate what, if any, underlying facts support the conclusion implicitly made in the affidavit that *the anonymous informant was the same person who provided accurate information to the law enforcement officers in the past.*
>
> \* \* \* \* \* \*

"Unlike *Gates* and *Draper* [*v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)], the information corroborated by Deputy Berg consisted only of easily obtainable facts and conditions existing at the time of the tip, *i.e.*, the location of the Thompsons' residence, their recent move, their ownership of a blue and white pickup and topper, and the place of Jackie Thompson's employment." [Cite omitted.]

*Thompson, supra* at 368–70.

 In the case at hand, Agent Parker's affidavit set out the basis for reliance on this previously-used confidential informant. Agent Parker asserted in his affidavit that he was contacted by the confidential informant on July 16, 1989, because the informant was having car trouble. Agent Parker had been working with this informant in the Grand Forks area. Upon Agent Parker's arrival at the convenience store where the informant was stranded, the informant advised Agent Parker that he had overheard a telephone conversation between two men at the store and an unknown third party. The individual talking on the convenience store telephone indicated that he was unable to purchase an entire ounce of snow, but that he would be at the house in approximately two minutes to pick up half an ounce of snow. Parker followed the two whom the confidential informant had pointed out to him as the two at the store, and observed the person whom he had been told by the informant was the one who the informant overheard on the telephone, enter the house for which the search warrant was sought, and shortly thereafter leave with a package.

No one even alleged seeing anyone do anything nor did they even allege hearing anyone planning to do anything in *Thompson* which in anyway implicated the *Thompson* home. Also, the informant in *Thompson* was totally anonymous, known by no one. Thus, there was no way to verify her veracity. The informant here, on the other hand, is confidential, unknown to the magistrate issuing the warrant, but known by Agent Parker, who could and did vouch for his reliability and veracity. This clearly distinguishes this case from *Thompson*.

In *State v. Handtmann*, 437 N.W.2d 830 (N.D.1989), an anonymous informant told Mandan Law Enforcement authorities that she had seen marijuana at a house in Mandan belonging to a family by the name of Begley. The informant described the house, told where it was located and said that a person, whose identity she did not know, would be making drug deliveries in the area in a blue car. Deputy Dennis Bullinger immediately established surveillance at the aforementioned residence. He observed an individual, identified as Jeff Stockert, leave the house, enter a blue Honda Civic, and followed him to Handtmann's residence. The surveillance team was unable to see whether or not Stockert carried anything into or out of Handtmann's house. After leaving Handtmann's house, Officer Bullinger followed Stockert to a gas station and then another Mandan residence. After Stockert left that house, Bullinger stopped him. When approaching Stockert's automobile, Officer Bullinger detected the odor of marijuana and observed paper and burnt material in the ashtray and green plant material that appeared to be marijuana on the dash. The Morton County Court issued search warrants for a variety of places, including Handtmann's residence. The search of Handtmann's residence uncovered drug paraphernalia, marijuana, and over $14,000 in cash. The District Court for Morton County denied Handtmann's motion to suppress the evidence. In reversing the admission of the evidence found at Handtmann's residence, we said:

"Although there was information that marijuana was present at the Begleys' house, Bullinger did not testify that the anonymous informant related any information about the presence of marijuana or other evidence connected with criminal activity at the defendants' house.... Bullinger did not testify about any information related by the anonymous informant that would indicate that a drug delivery would occur at the defendants' house. In the absence of evidence that the surveillance team saw Stockert take

anything into the defendants' house or in the absence of other reliable information about Handtmann, we do not believe that the evidence about Stockert and the anonymous informant's statements were sufficient to authorize the issuance of a warrant to search the defendants' house merely because Stockert stopped at their house."

*Handtmann* at 834–35.

Bullinger had indicated that he had personal knowledge of Handtmann being "suspected" of trafficking narcotics, but had also given the court false information about Handtmann. We concluded:

"[T]he specific information about Handtmann, including the false information, represents only unsupported conclusions and statements about his reputation of being 'suspected of trafficking narcotics' which, without some elaboration of the underlying circumstances for those conclusions and statements, are insufficient to support a determination that probable cause existed."

*Handtmann* at 835.

In the instant case, the confidential informant had related information which indicated that a drug delivery would occur at Wayne's residence. Also, Agent Parker saw the individual come out of Wayne's house with a brown paper object about the size of a baseball. In addition, the information in Agent Dahl's affidavit relating to Wayne's previous drug involvement was based upon a specific investigation by the North Dakota Attorney General's Drug Enforcement Unit of which he had personal knowledge.

We recognized in *Handtmann* that we have previously permitted the use of reputation, with other evidence to support a determination of probable cause. *Handtmann* at 835; *see Ringquist, supra; State v. Ronngren*, 361 N.W.2d 224 (N.D. 1985).

In another case relied upon by Wayne, *State v. Mische*, 448 N.W.2d 415 (N.D. 1989), law enforcement officials arranged a drug "buy" wherein Dion Wolbaum agreed to pick up marijuana and deliver it to the buyer, an undercover agent. Wolbaum took the agent's money and drove to a Bismarck home where he met Mische. When he delivered the marijuana, Wolbaum was arrested. Wolbaum admitted purchasing the marijuana from Mische and that, about a week earlier, he had also purchased marijuana from Mische at the same place. Pursuant to a search warrant procured for the residence, the officers discovered only a cutting agent for controlled substances. They also discovered that the residence belonged to Mische's parents and that Mische lived in a trailer in Lincoln, a town near Bismarck. The same day, another warrant was obtained to search Mische's trailer in Lincoln. The officers relied primarily on the affidavit for the Bismarck residence and two additional paragraphs in obtaining the search warrant for the Lincoln residence. The District Court for Burleigh County suppressed the evidence uncovered in the search of Mische's Lincoln residence. The basic issue in *Mische*, which differs from the issue in the case at hand, was whether or not substantial evidence of criminal activity by a defendant at a place other than his home was sufficient probable cause to issue a warrant to search the home. In affirming the suppression of the evidence, we said:

"Officer Becker's affidavit furnished no details to the magistrate to show how his informants knew about criminal transactions at Mische's place in Lincoln. No details reinforced Becker's claim that other information from the informants had been verified.

* * * * * *

"We have no doubt that there was more than ample evidence of Mische's criminal activity at the house in Bismarck where Mische at one time lived with his parents to justify the issuance of a search warrant to search that home. However, it was not until the officers searched that home and found no contraband that they discovered or acknowledged that Mische lived in a trailer in Lincoln. They had no actual knowledge of any activity at the trailer home in Lincoln. Probable cause to believe that Mische committed a crime does not estab-

lish probable cause to search his home for evidence of that crime."

*Mische* at 418, 421.

In the case at hand, the behavior upon which the affidavit for application of the search warrant was partially based occurred at the residence which was ultimately searched. While the other evidence in support of the probable cause determination was not specifically related to Wayne's residence, we find that Agent Parker's surveillance and observations at Wayne's residence provide a sufficient nexus between the house to be searched and the evidence sought. *See State v. Metzner*, 338 N.W.2d 799 (N.D.1983) (nexus required between the house to be searched and the evidence sought does not require an unbroken trial of evidence and allegation).

Wayne contends that the confidential informant's veracity was not established in the affidavits in support of the search warrant. In *State v. Dahl, supra*, 440 N.W.2d 716, a search warrant was obtained based upon information from a criminal informant who was offered prosecutorial immunity for the information. In the affidavit submitted to the court in application for the search warrant, the court was not advised that the informant was currently incarcerated, nor was it informed of the prosecutorial immunity. However, the law enforcement officer did testify as to the informant's reliability. The district court allowed the admission of the evidence obtained pursuant to the search warrant. In affirming the admission of the evidence, we said:

> "Although the information Sheriff Barglof neglected to provide to Judge Tjon is of the type generally pertinent to a determination of whether or not probable cause exists to issue a search warrant, under the totality-of-the-circumstances test, that information is not necessary in this case to establish probable cause.
>
> \* \* \* \* \* \*
>
> "We would have preferred that the sheriff had informed the magistrate that the informant was, at the time of the interview, an inmate of the federal prison in Minnesota and that he had been assured

of immunity from prosecution by the sheriff for information he divulged, but in light of the description of the scene of the crime, and items stolen and their accuracy in detail, it seems reasonable that the magistrate could assume the truth of the assertion that the informant had seen the stolen items at the defendant's home. This is especially so in light of the fact that there would probably be few search warrants issued if the information had to come only from saints."

*Dahl* at 719, 720.

Similarly, in the case at hand, the confidential informant had plead guilty to violations of federal laws and was awaiting sentencing at the time that the tip was given. Agent Parker, however, in his affidavit, set out the basis for reliance on the information based upon the fact that the informant had previously been reliable.

We have previously recognized that deference is ordinarily given to a magistrate's determination of probable cause. *Handtmann, supra*, 437 N.W.2d at 836. As long as there is a substantial basis for the magistrate's conclusion that probable cause exists, and the magistrate is performing his neutral and detached function, the judicial determination of probable cause will not be disturbed. *State v. Ronngren, supra*, 361 N.W.2d at 229. In *Ringquist, supra*, 433 N.W.2d at 215–16, we said:

> "Although each bit of information in this case, by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, ' "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... [which is not weighed in] individual layers but [in] the 'laminated' total." ' *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978), *quoting Smith v. United States*, 358 F.2d 833, 837 (U.S.App.D.C.1966), *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967)."

Keeping in mind the need to encourage the use of search warrants rather than searches incident to arrest, we conclude that there was a substantial basis for the magistrate's conclusion that probable cause existed for the issuance of the search warrant in this case. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (strong preference for warrants because a search warrant provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime); *State v. Riedinger,* 374 N.W.2d 866 (N.D.1985) (the use of warrants is the preferred procedure, and the products of valid search warrants should not be suppressed except for clear and compelling reasons).[2]

## SUFFICIENCY OF THE EVIDENCE

 Wayne asserts that the trial court erred in failing to grant his Rule 29, N.D.R. Crim.P., motion for judgment of acquittal at the close of the State's case. When ruling on such a motion, the trial court must first, assume the truth of the evidence which supports the State's case, and then, second, decide whether or not a reasonable person would be justified in concluding from this evidence that all the elements of the crime have been established beyond a reasonable doubt. *State v. Langan,* 410 N.W.2d 149, 150 (N.D.1987); *State v. Morris,* 331 N.W.2d 48, 55 (N.D. 1983). The State provided evidence that only Wayne and his wife lived at 1101 2nd Avenue North in Grand Forks and that the evidence discovered pursuant to the search warrant was a controlled substance.

Based upon our conclusion that the evidence was properly admitted, we find no error in denying the motion for judgment of acquittal.

Wayne next contends that the evidence presented at trial was circumstantial and insufficient to justify his conviction for possession of a controlled substance. We have previously set forth the following rules in a circumstantial evidence case:

"1. A verdict based upon circumstantial evidence carries the same presumption of correctness as other verdicts and will not be disturbed on appeal unless it is unwarranted.

"2. A conviction may be justified on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to conclude that the defendant is guilty beyond a reasonable doubt.

"3. At the trial level, circumstantial evidence must be conclusive and must exclude every reasonable hypothesis of innocence.

"4. The role of the appellate court is merely to review the record and determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.

"5. On an appeal challenging the sufficiency of the evidence, the defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inferences of guilt. We will reverse the decision of the trier of fact only if the record presents no substantial evidence to support the verdict."

*State v. Matuska,* 379 N.W.2d 273, 275 (N.D.1985).

---

2. As the "good-faith" exception to the exclusionary rule, announced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was not raised or addressed in the lower court, and as we have found that probable cause did exist, this is not a good case for us to determine whether or not we should adopt the *Leon* exception. We merely note that in *State v. Thompson,* 369 N.W.2d 363, 371 (N.D.1985), we pointed out:

"A six-justice majority of the Supreme Court held in *Leon* that the Fourth Amendment ex-

clusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. The Court reasoned that 'the marginal or non-existent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.' 104 S.Ct. at 3421."

In reviewing the sufficiency of the evidence we do not weigh conflicting evidence or judge the credibility of witnesses. *State v. Bastien*, 436 N.W.2d 229, 233 (N.D.1989). Moreover, we do not substitute our judgment for that of the jury. *State v. Jacobson*, 419 N.W.2d 899, 901 (N.D.1988).

Wayne was charged, in part, under section 19–03.1–23(3), N.D.C.C., which reads in pertinent part: "It is unlawful for any person to willfully, as defined in section 12.1–02–02, possess a controlled substance...." Section 12.1–02–02(1)(e) defines "willfully" as engaging in the conduct intentionally, knowingly, or recklessly. Wayne contends that, based on these sections, the facts of this case do not warrant a conviction. Wayne asserts that the evidence failed to show that he had dominion and control over the dresser drawer in which the heroin was found, and that, in fact, he was not even in North Dakota at the time of the search. This Court, prior to the amendment in Chapter 267 of the 1989 Session Laws which added the word "willfully," construed section 19–03.1–23(3), N.D.C.C., to be a strict liability offense and held that, under the statute, the State did not have to prove either that the accused intended to possess the controlled substance or that he had knowledge of the existence or identity of the substance. *State v. Michlitsch*, 438 N.W.2d 175, 177 (N.D.1989). We believe, under the above definition, that the jury could have reasonably concluded that Wayne committed the offense with which he was charged.

Wayne further contends that because he was either on his way to or in Minneapolis, Minnesota, at the time of the search, the State has failed to prove even constructive possession of the heroin. However, there was evidence presented to the jury that Wayne may have been at the residence as little as two hours before the search. There was also evidence that Wayne and his wife, Tracy, were the only residents of the house.

Wayne contends that the State failed to meet any of the factors set out for the determination of constructive possession in *State v. Morris, supra,* 331 N.W.2d at 54. *Morris* involved the search of a van in which marijuana was discovered. Morris was a passenger in the van. We affirmed the district court's finding of constructive possession as to Morris based upon evidence which established:

"(1) Morris was present in an area where marijuana was found, (2) Morris was in close proximity to the marijuana found, and (3) this marijuana was observed in plain view by the officer looking through the front passenger's side of the van."

*Morris* at 54. In discussing constructive possession, we also said:

"Constructive possession, or the ability to exercise dominion and control over a controlled substance, can be inferred from the totality of circumstances associated with a particular case. Some of the additional circumstances which may support an inference of constructive possession are an accused's presence in the place where a controlled substance is found, his proximity to the place where it is found, and the fact that the controlled substance is found in plain view." [Cites omitted.]

*Morris* at 54. These factors set out and recognized in *Morris,* as our language indicates, were not intended to be an all-inclusive list. As mentioned, constructive possession can be inferred from the totality of the circumstances. Other jurisdictions have recognized that the presence of a controlled substance on a person's premises is relevant evidence of possession of the substance. *See People v. Richardson,* 139 Mich.App. 622, 362 N.W.2d 853 (1984) (sufficient evidence to find constructive possession of cocaine where cocaine was found in a drawer of a waterbed located in one of the bedrooms of the apartment in which the defendant lived); *State v. Brennen,* 218 Neb. 454, 356 N.W.2d 861 (1984) (evidence of controlled substances on defendant's premises was sufficient to establish defendant's illegal possession of the controlled substances in the absence of any other reasonable explanation for its presence).

Therefore, taking into consideration that only Wayne and Tracy lived at 1101 2nd Avenue North in Grand Forks, that both Wayne and Tracy apparently occupied the bedroom in which the evidence was found, and that we have found the evidence to be admissible in this case, we conclude that the record contains substantial evidence to support the verdict.

Accordingly, we affirm the judgment of conviction.

VANDE WALLE, MESCHKE and GIERKE, JJ., concur.

LEVINE, Justice, concurring.

I give up. Notwithstanding the position I urged in *State v. Ringquist,* 433 N.W.2d 207, 217 (N.D.1988) (Levine, J., concurring and dissenting), namely, that we reject the *Gates* totality-of-the-circumstances test and continue to adhere to the *Aguilar–Spinelli* probable cause standard under our state constitution, henceforth, I will meekly join the majority rationale which adopts and applies *Gates*. I cannot resist pointing out that, as usual, the results under the *Gates* totality-of-circumstances rule are not noticeably different from our common-sense application of *Aguilar-Spinelli*. I regret that the delicate balance of federalism is askew in North Dakota.

I am uneasy that the majority's gratuitous analysis of the *Leon* "good faith" exception is a harbinger of ill tidings. I would prefer to decide only those issues in dispute and properly raised. Dictum in advisory opinions has a tendency to restrict future development of the law by inhibiting choices when the legal issue, discussed in dictum, is actually ripe for review. A good example of this phenomenon is apparent in *Bank of Steele v. Lang,* 441 N.W.2d 648 (N.D.1989).

Excepting n. 2, I concur.